FILED
2022 Feb-10 AM 11:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **PRO-BUILT DEVELOPMENT, LLC,** | § § § | |
| Plaintiff, | § § | Case No. 7:21-CV-1477-RDP |
| vs. | § § § | |
| **DELTA OIL SERVICES, INC., AND BURGESS EQUIPMENT REPAIR, LLC,** | § § § § § | |
| Defendants. | § | |

### DEFENDANT DELTA OIL SERVICES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

COMES NOW, Delta Oil Services, Inc., and hereby files its Answer to the Plaintiff's Complaint as follows:

### STATEMENT OF JURISDICTION

1. This is a private citizen suit brought against the Defendants pursuant to the provisions of the Clean Water Act, section 505, 33 U.S.C. § 1365.

    **Response: Admitted.**

2. The United States District Court for the Northern District of Alabama, Western Division, has jurisdiction over this claim as the affected property and activity occurred in the District.

    **Response: Admitted.**

3. The Plaintiff gave the Defendant a 60 Day Notice of Intent to File a Private Citizen Suit. The notice was sent via U.S. Mail from Patterson Comer Law Firm, 303 Main Ave., Ste. A, Northport, Alabama, on or about July 21, 2021. It was served via private process server on or about August 4, 2021.

    **Response: Admitted.**

## PARTIES

4. The Plaintiff, Pro-Built Development, LLC, is a limited liability company formed and operating in Tuscaloosa County, Alabama.

   **Response: N/A**

5. The Defendant, Delta Oil Services, Inc., is a domestic corporation formed and operating in Tuscaloosa County, Alabama.

   **Response: Admitted.**

6. The Defendant, Burgess Equipment Repair, LLC, is a limited liability company formed and operating in Tuscaloosa County, Alabama.

   **Response: N/A**

## STATEMENT OF FACTS

7. The Plaintiff, Pro-Built Development, LLC ("Pro-Built") owns more than 20 acres located directly behind Burgess Equipment Repair, LLC ("Burgess Equipment"), and Delta Oil Services, Inc. ("Delta Oil"), at or near Mitt Lary Road in Northport, Alabama near 3325 Mitt Lary Road.

   **Response: Admitted.**

8. Pro-Built acquired the property in fee simple in or around 2003. (See Deed 2003 Page 25576).

   **Response: Admitted.**

9. Burgess Equipment owns the property located at 3325 Mitt Lary Road. Burgess Equipment leases and/or rents part of the premises to Delta Oil.

   **Response: Admitted.**

10. Delta Oil is an oil, gas, solvent, and/or chemical disposal company. It has operated for several years on the property owned by Burgess Equipment.

    **Response: Denied.**

11. Burgess Equipment Repair is a company that services equipment. Included in Burgess' servicing of equipment is the storage of petroleum products in the form of used oil on the property of Burgess Equipment.

    **Response: N/A**

12. In 2014, Burgess Equipment Repair was investigated and cited by ADEM for discharge of oil into an adjoining wetland area. ADEM wrote, "DESCRIPTION: There is a large pool of what appears to be motor oil that may be coming from the truck liner that is at the top of the hill. In fact,

a trail of black can be seen from the fence line of the company to the pool of what was once water. This is a accumulation of water and not a pond.; Observed: Saturday, May 10, 2014 and Sunday May 11, 2014."

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

13. ADEM investigated the incident on June 18, 2014. "Investigation reveals oil has been released to the ground and has been impacted a small intermittent wetland."

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

14. ADEM sent a Warning Letter as an enforcement action.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

15. In its Compliance Evaluation Inspection Report of June 18, 2014, ADEM investigated an anonymous complaint that Burgess Equipment released a large pool of motor oil into an adjacent wetland. During the inspection, the owner, Wade Burgess, informed ADEM that his shop generates approximately 150 gallons of used oil per month.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

16. During their inspection, ADEM noted the presence of a 250 gallon used oil bulk storage container 1/4 full of used oil. It was not marked in any way and had an open drain in place over the opening.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

17. The ADEM inspector also noted empty oil storage containers along the fence at the East side of the property. She observed a plastic parts bin that held approximately sixteen 5-gallon plastic buckets of the type used to hold liquid products such as motor oil. Several were open and held several inches of black liquid. The ground to the south of the bin appeared to be saturated with oil.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

18. The inspection also revealed a gravel parking area near the center of the property with three closed and unmarked 55 gallon metal drums with significant rusting.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

19.   At the Southwest corner of the property, there was an asphalt-paved driveway that slopes downhill as it passes through a chain link fence around the property. Oil stains were evident on the pavement including two streaks that showed constant dripping and tire tracks. Where the tire tracks ended, the inspector saw there was an oily staining that extended from one edge of the pavement to the other and flowed under the gate and down the hill onto the property at the foot of the hill beyond the West end of Palmetto Street, which is a residential area. At the foot of the slope, there was a small pond or wetland area with soil/gravel mix between the driveway and the pond appeared to be oil stained with stressed areas of vegetation.

   **Response: Defendant is without sufficient information to admit or deny this allegation.**

20.   The inspector noted several areas of noncompliance by Burgess Equipment:

   a. Burgess Equipment had not notified ADEM of regulated waste activity, although the owner stated it generates approximately 150 gallons of used oil per month;

   b. One 250-gallon tote containing used oil and multiple plastic buckets containing oily water were not marked "Used Oil";

   c. The tote and plastic buckets were not closed;

   d. Oily stains were visible on the ground in two areas of the facility - one area along the east fence behind the shop, and one area at the southwest corner of the facility. The area at the southwest corner extends off the site and appears to have impacted a small body of water; and

   e. In the parking area behind the stop, there were three rusty 55 gallon drums filled with an unknown material.

   **Response: Defendant is without sufficient information to admit or deny this allegation.**

21.   In its February 20, 2015 Notification of Regulated Waste Activity to ADEM, Burgess Equipment Repair reported that it disposes of "12,000 pounds yearly" of "Waste Oil."

   **Response: Defendant is without sufficient information to admit or deny this allegation.**

22.   During a Compliance Evaluation Inspection by ADEM of January 2021, ADEM performed an inspection of the property. The inspector noted that Burgess told him that its used oil was from servicing its own trucks and was disposed of by Delta Oil Services.

   **Response: Defendant is without sufficient information to admit or deny this allegation.**

23.   The inspector noted that, on September 28, 2020, ADEM Field Operations Division personnel conducted an investigation at Burgess Equipment and observed several areas of fuel

spills in the gravel lot that had not been cleaned up and an area of used oil staining around the used oil storage area under the covered area at the back of the shop building. ADEM issued a warning letter to Burgess on November 13, 2020 requiring them to clean up and address the areas of the fuel and used il that had impacted the ground around the facility.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

24. The inspector then toured Burgess Equipment with an employee. The inspector saw where the areas of spilled-fuel-impacted-soil had been cleaned up from the gravel lot. Burgess Equipment also showed the ADEM inspector the area where it stored used oil. There was staining visible around the used oil storage tote. Burgess Equipment informed the ADEM inspector it had just received a spill containment pallet to place under the used oil storage tote and the tote was scheduled to be emptied, lifted to clean underneath, and placed down on the new secondary containment pallet on January 19, 2021.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

25. On May 17, 2021, ADEM reported that on April 15, 2021, a release was discovered at Burgess Equipment. On April 22, 2021, ADEM conducted a site visit. The inspector noted that, at the back right-hand side of the property there was a hillside leading down to a swampy area, which was the location of the release.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

26. The ADEM inspector provided a photograph of the release area. This area depicted is the Point of Origin for the release of oil onto Plaintiff's property into Carroll Creek.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

27. The inspector found Spectrum Industrial Services in the process of removing the impacted soil from the area. Burgess Equipment reported it had been leasing this area to Delta Oil Services to park their trucks overnight. The inspector found that the trucks were parked there when the release was initially discovered by Tuscaloosa EMA and Northport RFD.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

28. An investigation by the Tuscaloosa EMA and Northport Fire Department beginning April 15, 2021 followed complaints from local residents of strong solvent and petroleum odors behind their homes.

> **Response: Defendant is without sufficient information to admit or deny this allegation.**

29.     On April 16, 2021, investigators with ADEM, Tuscaloosa EMA and Northport Fire Department discovered an area of wetlands located behind Burgess Equipment approximately 100 square feet in size saturated with petroleum products that were seeping into a tributary of Carroll Creek at several points, creating a sheen.

>   **Response: Defendant is without sufficient information to admit or deny this allegation.**

30.     The investigators discovered that the point source of the spill appeared to be two Delta Oil Services tanker trucks, with the Delta Oil Services logo on the tankers which indicated this was the likely point source of the contamination. Below is an overhead from the EPA's investigator that shows the point source of the petroleum and solvent (two Delta tanker trucks) contamination and the area affected by the spill:

>   **Response: Denied.**

31. Here is an Alabama GIS image of Pro-Built's property. The property is composed of wetlands. Carroll Creek runs directly through the property.

>   **Response: Defendant is without sufficient information to admit or deny this allegation.**

32.     The Pro-Built Property is outlined in red. Burgess Equipment is located directly North of the Pro-Built property. Carroll Creek is shown in blue running through the Pro-Built property. Carroll Creek flows East where it empties into Lake Tuscaloosa. From where Carroll Creek runs across the Pro-Built property to where Carroll Creek empties into Lake Tuscaloosa is approximately one mile.

>   **Response: Defendant is without sufficient information to admit or deny this allegation.**

33.     Lake Tuscaloosa, constructed in 1969 from the damming of North River, serves as the water supply for Tuscaloosa, Northport, and surrounding communities.(Bathymetric Study of Carroll Creek, USGS, 2010). Lake Tuscaloosa is a navigable waterway. Carroll Creek is one of six subwater sheds draining into Lake Tuscaloosa. Carroll Creek is one of the major tributaries to Lake Tuscaloosa and contributes approximately 6% of the surface drainage area. Id. Bathymetric surveys of sedimentation deposits in Lake Tuscaloosa determined that the highest degree of sedimentation occurs at the mouth of Carroll Creek as it enters Lake Tuscaloosa. Id.

>   **Response: Defendant is without sufficient information to admit or deny this allegation.**

34.     From the Pro-Built property to the mouth of Carroll Creek into Lake Tuscaloosa is approximately one mile. Any sedimentation, pollution or contaminants deposited into Carroll Creek on Pro-Built's property will flow directly into Lake Tuscaloosa approximately one mile away.

>   **Response: Denied.**

35.     Petroleum products and solvents flowed from Delta Oil Services tankers located on the Burgess Equipment property into Carroll Creek and into Lake Tuscaloosa.

        **Response: Denied.**

36.     Joseph Ellis, a former employee of Delta Oil Services, is expected to state that Delta Oil Services deposited thousands of gallons of petroleum products and solvents into Carroll Creek over the course of two years.

        **Response: Denied.**

37.     On April 26, 2021, ADEM received a web complaint from a property owner adjacent to Burgess Equipment. He complained that there had been a leak from Burgess Equipment which Burgess claimed was a septic tank leak but the complainant stated it had more of an oil texture to it. The complainant reported that his dogs run all in the substance in the back yard. He reported that he observed this six months ago.

        **Response: Denied.**

38.     On April 25, 2021, a web complaint was received by ADEM of a neighbor noting a chemical odor about a week before which started getting stronger instead of going away. Other residents also noticed the odor. They walked toward the source of the odor and noted oil residue in the marsh area bordering the end of Palmetto Street directly behind Burgess and all through the creek that runs 3/4 of the perimeter of the neighborhood. There was a significant amount of residue. The complainant noted they could tell that Burgess Equipment knew what was happening because they had laid sand bags and oil sponges across the creek bed in an attempt to contain it.

        **Response: Denied.**

39.     On April 25, 2021, another web complaint was received by ADEM. It noted that there had been a potent smell ongoing since 2020. The smell was growing stronger since the beginning of 2021 and had gotten so bad it was making people light headed and some neighbors passed out from the smell. The water in their home became dingy and brown, and the resident was having migraines, sore throat, and upper respiratory issues. The neighbor also reported that the children from the neighborhood had been playing in the creek. On April 24, 2021, the oil spill was observed when the complainant's dog got out. He went looking for her and found her in the creek water near his neighborhood. That's when he discovered the oil and chemicals in the water and on the ground.

        **Response: Denied.**

40.     The oil spills from Burgess Equipment are a continuing problem. They have occurred since at least 2014. Burgess has received warning letters in the past for oil spills from the property but recurrent visits from ADEM shows that Burgess Equipment continued to have oil spills from the site. In 2020, ADEM inspectors again found areas of oil spills around the property and the used oil container with oil collected around it and evidence of oil spills in the parking lot.

**Response: Denied.**

41. On May 6, 2021, ADEM conducted an inspection of Delta Oil Services' facilities at Adger and Cottondale. ADEM found that Delta Oil violated requirements for oil disposal, including:

    a. Used oil was leaking into the woods behind the facility and into a small stream;

    b. Delta Oil disposed of used oil onto the ground at the Adger facility;

    c. Delta Oil failed to label twenty aboveground tanks containing used oil with the words "Used Oil";

    d. Delta Oil failed to keep closed two totes containing used oil;

    e. Delta Oil failed to provide secondary containment for the storage of totes containing used oil;

    f. Delta Oil stored oil in three aboveground tanks that were not in good condition and were leaking;

    g. Delta Oil stored used oil in three aboveground used oil storage tanks that did not have a secondary storage containment system;

    h. Delta Oil failed to clean up used oil released from a secondary containment drainage hose and from leaking aboveground tanks;

    i. Delta Oil transported EPA Hazardous Waste from a generator in Tuscaloosa without an Alabama Hazardous Waste Transport Permit;

    j. Delta Oil stored hazardous waste at the Adger facility without a permit;

    k. Delta Oil treated hazardous waste by mixing the hazardous waste with non-hazardous used oil in tanks at the Adger facility;

    l. Delta Oil failed to submit a Form 8700-12 to the Department in year 2021; and

    m. Delta Oil failed to include the transfer station located in Cottondale in their permit application.

    **Response: Denied.**

42. Just like Burgess Equipment, Delta Oil Services is a repeat offender concerning oil spills. An inspection in May 2021 by ADEM found significant oil leaking into the woods and into a small stream.

    **Response: Denied.**

43.     Both corporations have a history of noncompliance with ADEM regulations. In 2014 and 2020, Burgess Equipment was found with multiple oils spills on the property adjacent to Pro-Built. Delta Oil Services was found in May 2021 to be noncompliant with ADEM regulations at its Adger facility. The ADEM inspector found significant amounts of used oil on the property in Adger, including used oil that had leaked into the woods and into a small stream behind the property. It is thus a reasonable likelihood that, even though Delta Oil is no longer on the property, that Burgess Equipment will continue to engage in pollution in the future. Burgess Equipment stores, and continues to store, 12,000 gallons per year of used oil on its property. It continues to own the property and continues to repair equipment on and off the property. It continues to store used oil in containers on the property. Burgess Equipment has a history of noncompliance with ADEM and EPA regulations for the illegal discharge of pollutants without a permit, as noted in 2014 and 2020. Thus, there is a reasonable likelihood that Burgess Equipment will continue to engage in pollution in the future.

> **Response: Denied.**

44.     Given the continual nature and history of noncompliance by Burgess Equipment and Delta Oil Services, it appears that both past polluters will continue to pollute in the future. See, e.g., Day LLC v. Plantation Pipe Line Co., 315 F. Supp. 3d 1219, 1238 (N. D. Ala. 2018). Thus, there is "a continuing violation or the imminence of a future violation" of the CWA. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) (Emphasis added).

> **Response: Denied.**

45.     There have been several complaints from the vicinity of Huntingdon Elementary School of a foul, chemical odor, and black sludge with the appearance of petroleum.

> **Response: Denied.**

46.     Investigations by federal, state, city and county officials confirmed that Burgess is the location of the site of the chemical contamination.

> **Response: Denied.**

47.     This is not the first time that chemicals have been spilled or dumped on the property. In or around 2014, ADEM investigated a complaint of a chemical spill and instructed the defendants on remediation and corrective measures.

> **Response: Denied.**

48.     The Defendants are responsible for the chemical contamination of the adjoining properties.

> **Response: Denied.**

49.     The Plaintiff's property has suffered and will continue to suffer loss of value in the before-and-after value of the property.

> **Response: Denied.**

50.     The defendants maintained, and continue to maintain, a nuisance through their business operations and failure or refusal to remediate the situation.

**Response: Denied.**

### COUNT I – TRESPASS

51.     The conduct of the Defendants has disturbed the possession of the plaintiff's property.

**Response: Denied.**

52.     As a proximate result, the plaintiff suffered injury, harm and/or damage.

**Response: Denied.**

### COUNT II – NUISANCE

53.     The improper storage and/or disposal and/or cleanup of toxic chemicals resulted in permanent contamination of plaintiff's property. This misconduct has caused, and continues to cause hurt, inconvenience, annoyance, damage and irreparable injury to the plaintiff.

**Response: Denied.**

54.     The acts complained of are those which would affect an ordinary, reasonable person.

**Response: Denied.**

55. As a proximate consequence, the plaintiff suffered injury, harm and/or damage.

**Response: Denied.**

### COUNT III

### NEGLIGENCE/WANTONNESS

56.     The defendants negligently and/or wantonly maintained and/or disposed of noxious chemicals so that plaintiff's property was permanently contaminated and damaged.

**Response: Denied.**

57.     As a proximate result, the plaintiff suffered injury, harm and/or damage.

**Response: Denied.**

### COUNT IV

### CLEAN WATER ACT

58.     The Plaintiff realleges all prior paragraphs as if set out fully herein.

59.     By dumping chemicals and/or petroleum products onto the Plaintiff's property, and into Carroll Creek, the Defendants violated the provisions of the Clean Water Act.

   **Response: Denied.**

60.     "The CWA authorizes citizen enforcement actions against any person "alleged to be in violation" of an effluent limitation or standard under the CWA or an administrative order by the EPA or a state. 33 U.S.C. § 1365(a)(1). The Act requires plaintiffs to give notice of the alleged violations at least sixty days prior to commencing a citizen suit. Id. § 1365(b)(1). Courts in such actions may award civil penalties and grant equitable relief. Id. §§ 1365(a), 1319(d)." Black Warrior River-Keeper, Inc. v. Drummond Co., Inc., 387 F. Supp. 3d 1271, 1278 (N.D. Ala. 2019).

   **Response: Denied.**

61.     "To establish a CWA violation, the plaintiffs must prove that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a NPDES permit." Woods Knoll, LLC v. City of Lincoln, No. 1:09-CV-1219-VEH, 2012 U.S. Dist. LEXIS 154592, at *10 (N.D. Ala. Oct. 29, 2012) (citing Parker, 386 F.3d at 1008)).

   **Response: Denied.**

62.     The Clean Water Act prohibits the discharge of pollutants into navigable waters of the United States. 33 U.S.C. §§ 1311(A), 1362(7). "This Court adopted the "significant nexus" test set forth in Justice Kennedy's concurrence as the controlling definition for our circuit. United States v. Robison, 505 F.3d 1208, 1221 (11th Cir. 2007). Here, therefore, a water is navigable "if it possesses a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." Id. at 1218 (quoting Rapanos, 547 U.S. at 759, 126 S. Ct. at 2236 (Kennedy, J., concurring)). A wetland or water meets the "significant nexus" test if it "significantly affects the chemical, physical, and biological integrity" of a navigable water. Id. at 1218 (quotation marks omitted and alteration adopted). A "mere hydrologic connection" alone will not suffice. Id. at 1222 (quotation marks omitted)." United States v. Coleman, 833 F. App'x 810, 811-12 (11th Cir. 2020).

   **Response: Denied.**

63.     The U.S. Geological Survey conducted a sedimentation study of Carroll Creek in 2010. It noted that Carroll Creek is the primary subwater shed of six creeks that comprise Lake Tuscaloosa. Carroll Creek is one of the major tributaries to Lake Tuscaloosa. "Carroll Creek constitutes about 6 percent of the surface drainage area" of Lake Tuscaloosa. It also concluded that Carroll Creek is the subwater shed primarily responsible for most of the sedimentation in Lake Tuscaloosa. Id. (USGS Bathymetric Study of Carroll Creek, 2010).

   **Response: Denied.**

64.     Stated another way, because Carroll Creek brings in the most sedimentation, it is axiomatic that anything dumped into Carroll Creek, certainly at a location one mile away from Lake Tuscaloosa, is significantly likely to affect the chemical, physical, and biological integrity of Lake Tuscaloosa. See United States v. Coleman, 833 F. App'x 810, 813 (11th Cir. 2020).

**Response: Denied.**

65. Because Carroll Creek is the primary subwater shed for Lake Tuscaloosa, there is a significant nexus to navigable waters. The point source of the discharge is the Delta Oil tanker trucks, which discharged directly into Carroll Creek, which is located approximately one mile from Lake Tuscaloosa and flows directly into the Lake.

**Response: Denied.**

66. The Defendants directly discharged pollution into navigable waters of the United States by discharging used oil and solvents into Carroll Creek, which has a significant nexus to Lake Tuscaloosa as Carroll Creek is the primary subwater shed responsible for 6 percent of the surface drainage area into Lake Tuscaloosa and the primary source of sedimentation in Lake Tuscaloosa. See United States v. Coleman, 833 F. App'x 810, 813 (11th Cir. 2020); see also Garrison v. New Fashion Pork LLP, No. 18-cv-3073-CJW, 2019 U.S. Dist. LEXIS 198297, at *26 (N.D. Iowa July 1, 2019).

**Response: Denied.**

67. The point source of the petroleum and solvents deposited into Carroll Creek by Delta Oil Services and/or Burgess Equipment was two Delta Oil tanker trucks parked at the edge of the Burgess Equipment property on the property line adjacent to property owned by Pro-Built Development. The point source is identified in the following photo:

**Response: Denied.**

68. "The most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. Id. at 57. Rather, a plaintiff must show a "continuous or intermittent" violation under § 1365(a) for a court to possess subject matter jurisdiction." Day, LLC v. Plantation Pipe Line Co., 315 F. Supp. 3d 1219, 1234 (N.D. Ala. 2018).

**Response: Denied.**

69. "An 'ongoing violation' is one where this is 'either continuous or intermittent violation - that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Day, LLC v. Plantation Pipe Line Co., 315 F. Supp. 3d 1219, 1239 (N.D. Ala. 2018) (quoting Gwaltney, 484 U.S. at 57).

**Response: Denied.**

70. Thus far, Delta Oil Services is silent on the issue of its contribution to the cleanup or whether it intends to continue operations at the Burgess Equipment property. Burgess Equipment contends it engaged in the cleanup of the petroleum products. It also contends that Delta Oil Services will not be operating there in the future. However, Burgess Equipment has never stated it will stop operating at the property nor that it will stop repairing equipment or storing used oil on the property.

**Response: Denied.**

71.     Burgess Equipment has been cited by ADEM for the unlawful discharge of used oil on the property. In 2014 and 2020, ADEM found Burgess Equipment to be engaged in the unlawful storage of used oil and the unlawful discharge of used oil from a point source on the property located directly adjacent to the Pro-Built property.

**Response: Defendant is without sufficient information to admit or deny this allegation.**

72.     Burgess Equipment continues to store used oil on the property (up to 12,000 gallons per year as reported to ADEM). There is a reasonable likelihood that Burgess Equipment continues and will continue to unlawfully discharge pollutants into Carroll Creek, which is located on Plaintiff's property and has a substantial nexus to Lake Tuscaloosa, a navigable water in the United States. See Day, LLC v. Plantation Pipe Line Co., 315 F. Supp. 3d 1219, 1238 (N.D. Ala. 2018).

**Response: Defendant is without sufficient information to admit or deny this allegation.**

73.     Burgess Equipment was found by ADEM in 2014 and 2020 to be the source of contamination as a point source from its used oil tote and equipment on the property. Delta Oil Services was found on May 6, 2021 to have multiple petroleum spills of used oil at its Adger, Alabama location, with used oil spreading into the woods and into a small stream.

**Response: Defendant is without sufficient information to admit or deny this allegation.**

74.     Due to their previous history as polluters with used oil and other petroleum products, the Defendants are likely to pollute in the future. Burgess Equipment continues to repair equipment at the site and continues to store used oil there. Upon information and belief, Delta Oil Services continues to operate at the site and continues to park tankers there. Both parties have been found in violation of ADEM regulations for pollution with used oil on other occasions. Both parties are likely to engage in continuing pollution in the future so that this case does not involve only wholly past conduct.

**Response: Denied.**

75.     "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. Concentrated Phosphate Export Assn., 393 U.S. at 203." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190, 120 S. Ct. 693, 709 (2000).

**Response: Denied.**

76.     "The '[m]ootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" Id., 484 U.S. at 66-67, 108 S.Ct. at 386

(quoting United States v. Oregon State Medical Society, 343 U.S. 326, 333, 72 S.Ct. 690, 696, 96 L.Ed. 978 (1952)).") Black Warrior Riverkeeper, Inc. v. Birmingham Airport Auth., No. CV-07-J-591-S, 2008 U.S. Dist. LEXIS 129602, at *3-4 (N.D. Ala. Mar. 3, 2008).

**Response: Denied.**

77. Delta Oil is entirely silent on the issue. On the other hand, Burgess Equipment protests "repentance and reform" in its Motion to Dismiss by claiming it cleaned up the spill yet Burgess Equipment continues to store up to 12,000 gallons of used oil on its property and continues to repair equipment on and off the property.

**Response: Denied.**

78. Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." CWA Section 301(a), 33 U.S.C. Section 1311(a), prohibits the discharge of pollutants into waters of the United States except when authorized by a NPDES permit.

**Response: N/A**

79. "Waters of the United States" are defined by federal regulation as:

(1) All waters which are currently used, or were used in the past, or may

be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;

(2) All interstate waters including interstate wetlands;

(3) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters:

(I) Which are or could be used by interstate or foreign travelers for recreational or other purposes; or

(ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or

(iii) Which are used or could be used for industrial purposes by industries in interstate commerce;

(4) All impoundments of waters otherwise defined as waters of the United States under this definition;

(5) Tributaries of waters identified in paragraphs (s)(1) through (4) of this section;

(6) The territorial sea;

(7) Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (s)(1) through (6) of this section; waste treatment systems, including treatment ponds or lagoons designed to meet the requirements of CWA (other than cooling ponds as defined in 40 CFR 423.11(m) which also meet the criteria of this definition) are not waters of the United States.

**Response: N/A**

80. The Plaintiff provided the Defendants with 60 Days Notice of Intent to Bring a Private Citizen Suit. More than 60 days have elapsed since the filing of the suit without an action being brought by the United States Environmental Protection Agency.

**Response: Admitted.**

81. Since the agency did not take action, the Plaintiff initiates this private citizen suit against the Defendants for the pollution referenced herein above.

**Response: N/A**

### REQUEST FOR RELIEF

82. The plaintiff respectfully requests injunctive relief. Plaintiff's property has been irreparably harmed as a result of the defendants' misconduct.

**Response: Defendant denies Plaintiffs are entitled to Injunctive Relief.**

83. The plaintiff respectfully requests prospective injunctive relief against the defendants because they are likely polluters in the future.

**Response: Defendant denies Plaintiffs are entitled to Injunctive Relief.**

84. The plaintiff respectfully requests compensatory damages, punitive damages, fees, costs and interest.

**Response: Defendant denies Plaintiffs are entitled to any compensatory or punitive damages.**

85. Pursuant to the CWA, § 505(a), 33 U.S.C. § 1365(a), the plaintiff seeks damages and reasonable costs, attorney and expert fees, and any other relief deemed just and appropriate by the court pursuant to 33 U.S.C. § 1365(d).

**Response: Defendant denies Plaintiffs are entitled to damages, cost, or fees.**

86. The plaintiff demands a trial by struck jury.

### DEFENSES AND AFFIRMATIVE DEFENSES

NOW, THEREFORE, having responded to the allegations in the Plaintiffs' Complaint, Delta Oil Services, Inc., asserts the following defenses:

## FIRST DEFENSE

The Plaintiff's complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

The Plaintiff's claims are barred by the Plaintiff's waiver of the claims in this litigation.

## THIRD DEFENSE

The Plaintiff's claims are barred by the *Doctrine of Estoppel.*

## FOURTH DEFENSE

The Plaintiff's claims are barred as a result of the *Doctrine of Contributory Negligence.*

## FIFTH DEFENSE

The Defendant hereby denies each and every factual allegation and claim for damages in the Plaintiff's Complaint and demands strict proof thereof.

## SIXTH DEFENSE

The Defendant pleads not guilty.

## SEVENTH DEFENSE

The Plaintiff's claims are barred by the *Doctrine of Unavoidable Accident.*

## EIGHTH DEFENSE

The Plaintiff's claims are barred by the *Doctrine of Unconscionability.*

## NINTH DEFENSE

The Defendant asserts a set-off for any and all amounts due the Defendant.

## TENTH DEFENSE

The Defendant pleads the general issue and demands strict proof thereof.

## ELEVENTH DEFENSE

The Plaintiff's claims are barred by the Statute of Limitations.

**TWELFTH DEFENSE**

The Plaintiff's claims are barred by the *Doctrine of Lack of Capacity to Sue.*

**THIRTEENTH DEFENSE**

The Plaintiff's claims are barred by the *Doctrine of Laches.*

**FOURTEENTH DEFENSE**

The Plaintiff's claims are barred by the *Doctrine of Lack of Causal Relation.*

**FIFTEENTH DEFENSE**

The Plaintiff's claims are barred due to Plaintiff's failure to mitigate its damages.

**SIXTEENTH DEFENSE**

The Plaintiff's claims are barred by the *Doctrine of Acquiescence.*

**SEVENTEENTH DEFENSE**

The Plaintiff's claims are barred by the *Doctrine of Lack of Intent to Injure Competition.*

**EIGHTEENTH DEFENSE**

This Defendant asserts that it is entitled to a set off or credit of any and all settlement amounts paid by any party or potential party to this litigation, whether or not named herein, pursuant to Williams v. Colquitt, 272 Ala. 577, 133 So.2d 364 (Ala. 1961), and its progeny.

**NINETEENTH DEFENSE**

The Plaintiff's claims are barred by the *Doctrine of Limitations.*

**TWENTIETH DEFENSE**

The Plaintiff's claims are barred by the *Doctrine of Preexisting Injury.*

**TWENTY-FIRST DEFENSE**

An award of punitive damages in this case against this Defendant would be unconstitutional for the punitive damages awards are not governed by any specific standards, are not based on rational

distinctions, do not serve any legitimate state interest and thereby violate the due process and equal protection provisions of both the Fourteenth Amendment to the United States Constitution and Article I, Sections 1, 6 and 22 of the Constitution of Alabama.

### TWENTY-SECOND DEFENSE

The Plaintiff's demand for punitive damages violates the due process clause of the Fourteenth Amendment of the United States Constitution in that the claim for punitive damages is vague and not rationally related to any legitimate government interests.

### TWENTY-THIRD DEFENSE

The Plaintiff's demand for punitive damages violates the Sixth Amendment of the United States Constitution in that the Plaintiff's claim for punitive damages is a claim that is penal in nature entitling Plaintiff to the same procedural safeguards accorded to a criminal defendant under the Sixth Amendment.

### TWENTY-FOURTH DEFENSE

The Plaintiff's demand for punitive damages violates the self-incrimination clause of the Fifth Amendment of the United States Constitution in that the damages claimed are penal in nature while the Defendant is required to disclose documents and/or other evidence without the safeguard against self-incrimination set out in the Fifth Amendment.

### TWENTY-FIFTH DEFENSE

The Plaintiff's demand for punitive damages violates the Fifth Amendment of the United States Constitution which prohibits deprivation of life, liberty or property except by due process of law in that the claim for punitive damages is vague and not rationally related to any legitimate government interests.

### TWENTY-SIXTH DEFENSE

The Plaintiff's demand for punitive damages violates the rights guaranteed by the United States Constitution in that the claim for punitive damages is penal in nature for which the burden of proof on the Plaintiff is less than the 'beyond a reasonable doubt' standard required in criminal cases.

## TWENTY-SEVENTH DEFENSE

The Plaintiff's demand for punitive damages is unconstitutional under the Constitution of the State of Alabama which provides in Article I, Section 6, that no person shall be deprived of life, liberty or property except by due process of law, in that the punitive damages claimed are vague and not rationally related to any legitimate government interests.

## TWENTY-EIGHTH DEFENSE

The Plaintiff's demand for punitive damages is unconstitutional under the Constitution of the State of Alabama, Section 6, that no person shall be deprived of life, liberty or property except by due process of law, in that the punitive damages claimed are penal in nature, requiring a burden of proof on the Plaintiff which is less than the 'beyond a reasonable doubt' burden of proof required in a criminal case.

## TWENTY-NINTH DEFENSE

Punitive damages are penal in nature yet defendants in civil actions are not awarded the same procedural safeguards accorded to criminal defendants under the Fourteenth, Fifteenth and Sixteenth Amendments to the United States Constitution, including, without limitation, requiring proof beyond a reasonable doubt and imposing civil penal fines in excess of those fines that could be imposed under criminal law.

                                                */s/Jeffery C. Smith*
                                                **Jeffrey C. Smith**  (SMI-198)
                                                Attorney for Defendant

OF COUNSEL:

WATSON & SMITH, LLC
1651 McFarland Blvd. North
Tuscaloosa, AL 35406
205-345-1577

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I have served a copy of the foregoing Answer on the following counsel in this proceeding by mailing same by United States mail, properly addressed and first-class postage prepaid, or via AlaFile, this 8th day of February 2022.

TO:

J. Michael Comer
Patterson Comer Law Firm
303 Main Avenue, Suite A
Northport, AL 35476

                                                */s/ Jeffery C. Smith*
                                                **Jeffrey C. Smith**  (SMI-198)